UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

NEY RAMIREZ,

     Plaintiff,

v.                          Case No.:  8:23-cv-1373-NHA

COMMISSIONER OF
SOCIAL SECURITY,

     Defendant.

_____/

## **ORDER**

Plaintiff asks the Court to reverse a December 8, 2022 decision finding that he was not disabled and denying his claim for supplemental security income. On appeal, Plaintiff argues that the Administrative Law Judge ("ALJ") erred by (1) finding that Plaintiff could perform his past relevant work, notwithstanding his inability to stand for more than six hours per work shift; (2) failing to include in Plaintiff's residual functional capacity ("RFC") certain limitations recommended by state agency consultants Yamir Laboy, Psy. D. and Candice Mihm, Ph.D.; (3) failing to properly consider and incorporate into the RFC greater limitations in Plaintiff's ability to maintain concentration, persistence, and pace; (4) improperly discounting the opinion of Alicia Carden, APRN; (5) failing to consider evidence in Plaintiff's 2018 application for social security; and (6) wrongly concluding on the basis of the alleged errors in the

previous steps that Plaintiff was able perform medium work and was, therefore, not disabled. Doc. 18. Having reviewed the parties' briefing and the record below, I find the ALJ's decision was based on substantial evidence and employed proper legal standards. I affirm.

## I.    Background

Plaintiff, who was born in 1967, has an 8th grade education, and has previously worked cleaning recreational vehicles (RVs) and busses. R. 54, 57–58, 291. He initially alleged his bipolar disorder, depression, and sleeping disorder rendered him unable to work. R. 288. He later claimed that neuropathy in his feet contributed to his disability. R. 131. In all, Plaintiff asserted that he could not work because he was depressed, angry, anxious, forgetful, and had difficulty standing. R. 309, 311.

Plaintiff applied for disability insurance and supplemental security income on January 30, 2018. R. 33. An ALJ denied those claims on January 24, 2020. *Id.*

On June 22, 2020, Plaintiff filed another application for supplemental security income. R. 247–68. While he initially alleged an earlier onset date, Plaintiff ultimately alleged he became disabled on January 30, 2020.[1] R. 56.

---

[1] This date was selected at Plaintiff's hearing, by Plaintiff's representative, expressly because it followed the prior ALJ decision that Plaintiff not disabled. R. 56.

The Commissioner denied Plaintiff's claims at the initial level (R. 109) and upon reconsideration (R. 121). Plaintiff then requested an administrative hearing. R. 164. The ALJ conducted a hearing on October 18, 2022, at which both Plaintiff and a vocational expert testified. R. 49–92.

a. Evidence Relating to Physical Limitations

In applying for disability benefits, Plaintiff and his representative reported that he was able to independently shop for groceries, use public transportation, and care for his mother, including by preparing meals and doing laundry. R. 312, 353, 355, 370. But Plaintiff indicated he had difficulty standing and could only walk a block before needing to rest. R. 320.

Plaintiff reported to the SSA that he saw a foot doctor from November 2020 to January 2021. R. 325. Indeed, Plaintiff sought treatment for foot pain at the Good Samaritan Free Clinic during this time. R. 594. But the clinician's notes do not indicate any abnormalities with his feet, only that he was referred to a podiatrist. R. 597, 602, 654. Plaintiff saw a podiatrist in February 2021, who found problems with Plaintiff's toenail, but noted that Plaintiff had positive sensation. R. 599. In June 2021, Plaintiff denied issues with numbness. R. 691. In February 2022, although Plaintiff complained of worsening neuropathy, an examination showed that Plaintiff walked normally and had normal sensitivity in his feet. R. 762–63. A consultative examiner opined that Plaintiff did not have any significant findings that would prevent

3

him from doing regular work. R. 764. In January 2022, Plaintiff reported he had no problems walking or climbing stairs. R. 769. Moreover, his therapist regularly noted that he walked independently. *See, e.g.,* R. 462, 487, 716, 739, 750, 785.

And, while Plaintiff later testified that his arthritis made it difficult to grip objects (R. 62), the consultative examiner found Plaintiff had no issues with his hands. R. 763 (5/5 grip strength and normal range of motion in hands).

b. <u>Evidence of Mental Health Limitations</u>

Plaintiff's mental health records date back to 2017 and show that Plaintiff suffered from substance and alcohol abuse, bipolar disorder, adjustment disorder, intermittent explosive disorder, and depression. R. 449, 454, 467–68.

Plaintiff reported that his ability to concentrate "depends on [the] day." R. 373. His therapist frequently found his concentration, memory, and cognition to be within normal limits. R. 449, 454, 463, 468, 471, 474, 477, 486, 493, 499, 510, 513, 555, 563, 576, 740, 751, 755, 778, 786, 789, 800. Although Plaintiff sometimes displayed impaired concentration, it usually correlated with substance abuse or noncompliance with medication. *See* R. 505 (impaired concentration when out of medication); 582 (impaired concentration when seeking substance abuse treatment); 717 (limited concentration when non-compliant with medication). In his most recent medical records, in June 2022,

4

Plaintiff himself reported that he was only having occasional trouble concentrating. R. 802.

Plaintiff also reported being easily angered. R. 451; 467 (Baker Acted after an altercation in 2017). But at his appointments with his therapist, Plaintiff often had normal demeanor and behavior. R. 449, 463, 471, 477, 493, 498, 513, 555, 576, 740, 755, 778; *but see* R. 454 (dramatic demeanor). Moreover, although Plaintiff reported being easily angered (*see, e.g.,* R. 755), his providers rated his limitations in the category of "danger to others" as being either "no problem" or "less than slight problem" R. 735, 753, 780.

To the extent Plaintiff suffered from declines in mental health, these corresponded to times when he was non-compliant with treatment or using drugs. *See* R. 470 (reporting in September 2017 that he was calmer on medication); R. 484 ("I have not been snapping out on people."); R. 517 (In February 2020, after being off medication and failing to seek mental health treatment for nearly six months, Plaintiff was Baker Acted); R. 716 (In February 2021, Plaintiff angry after being without medication). Plaintiff seemed to recognize this, once admitting, "I was doing good until I ran out of medication." R. 577. And, the most recent treatment notes in the record show that Plaintiff was compliant with his medication. R. 788, 799.

c. <u>Opinions of state agency psychological consultants Drs. Laboy and Mihm</u>

Plaintiff's case record contained the assessments of the State agency psychological consultants Yamir Laboy, Psy.D., and Candace Mihm, Ph.D. Both Drs. Laboy and Mihm remarked that the claimant had moderate limitations in his ability to maintain attention and concentration for extended periods, his ability to complete a normal workday without interruptions from psychologically based symptoms, his ability to interact appropriately with the general public, and his ability to accept and respond appropriately to criticism from supervisors. R. 103–06; 120–21. Ultimately, Dr. Laboy opined that Plaintiff could comprehend/memorize brief, straightforward job-related instructions, execute short, simple instructions, communicate about routine employment matters, accept periodic, instructive supervisory input, and adjust to modifications in his work duties, but could not work collaboratively with others or interact with the public in a customer service position. R. 106–07. Meanwhile, Dr. Mihm opined that Plaintiff could understand and remember simple and detailed instructions, perform simple tasks, maintain the concentration, persistence, and pace for simple tasks with ordinary supervision, adapt to changes in the workplace, and interact adequately with others as needed (but would perform best in a low social demand setting). R. 120.

6

### d.  Opinion of treating therapist APRN Carden

Also in the record was the assessment of Plaintiff's treating therapist, Alicia Carden, APRN. APRN Carden completed part of a "Mental Residual Functional Capacity Assessment" in which she checked boxes indicating that Plaintiff had marked limitations in his ability to remember locations and work-like procedures, understand and remember both short and detailed instructions, maintain appropriate behavior, work with others, respond to change, and maintain attention and concentration. R. 793–95 (underlying opinion).  Ms. Carden did not complete the portion of the assessment titled "Functional Capacity Assessment," which asked her to explain her conclusions in narrative form and to clarify any limitations or functions. R. 795.

### e.  Plaintiff's Testimony

At the hearing before the ALJ, Plaintiff testified that he was unable to work due to arthritis, neuropathy in his feet, back pain, knee pain, and mental impairments. R. 60–62. He testified his physical conditions made it difficult to grip objects (R. 62), stand for more than five minutes (*id.*), lift more than five to ten pounds (R. 64), and walk more than a block (R. 63). And, as to his mental health, Plaintiff said that he was forgetful, had trouble concentrating, and suffered from anxiety. R. 65, 68–69. Plaintiff also testified that he suffered from anger issues. R. 65, 68. As an example of his anger, Plaintiff recounted a

story of once chasing down the owner at his place of employment with a brick. R. 68.

Plaintiff testified that he lived with his mother, who woke him and reminded him to shower, but also acknowledged that he assisted greatly in her care. R. 71–72, 75.

Plaintiff testified about his prior work cleaning busses in 2007, which entailed driving busses through bus carwashes and then cleaning the bus interiors by vacuuming and cleaning seats. R. 57. He testified he held a similar job from 2010 to 2014 cleaning the interior of recreational vehicles ("RVs"). R. 58. Although prior to the hearing, in applying for disability benefits, Plaintiff indicated that his prior work required him to stand and walk for 8 hours each shift (R. 291), at the hearing Plaintiff explained that, in these jobs, he stood in approximately one-hour intervals, for a total of three to four hours in an eight-hour shift. R. 62; *see also* R. 63 (does not recall standing for more than four hours in that job).

f. <u>Testimony of the Vocational Expert</u>

After Plaintiff's testimony, the vocational expert ("VE") testified that Plaintiff's past work was a composite job, comprised of the jobs of automatic washer and of detailer, which both generally required a "medium" exertional level, but that Plaintiff performed his job at a "light" exertional level, and as unskilled work. R. 85. The VE testified that someone who was able to lift, carry,

8

push or pull 50 pounds occasionally and 25 pounds frequently; stand and/or walk six hours in an eight hour workday; sit six hours in an eight hour workday; understand, remember, and apply simple instructions; interact with supervisors but only occasionally with coworkers; concentrate, persist, and maintain pace for two hours at a time; and adapt to gradual changes in the workplace; but could not interact with the general public or perform tandem tasks, could perform the composite job of jobs of automatic washer/detailer as Plaintiff actually performed the job. R. 86–87.

g. <u>The ALJ's Decision</u>

Following the hearing, and after review of the record, the ALJ found that Plaintiff was not disabled and denied Plaintiff's claims for benefits. R. 33–43.

First, the ALJ found that Plaintiff had not engaged in substantial gainful activity since he applied for SSI. R. 35. Second, the ALJ found that Plaintiff did have severe impairments, specifically, peripheral neuropathy, obesity, and bipolar disorder. R. 35. Third, notwithstanding the noted impairments, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 36.

In making the latter determination, the ALJ evaluated Plaintiff's mental impairments using the Psychiatric Review Technique ("PRT"). 20 C.F.R. § 416.920a. In the PRT, the ALJ rates the severity of a claimant's ability to:

understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. *Id.* § 416.920a(c)(3). Here, the ALJ found that Plaintiff had mild limitations in understanding, remembering, or applying information and in his ability to adapt or manage himself, and had moderate limitations in his ability to interact with others and to concentrate, persist, or maintain pace. R. 36–37. In finding he had moderate limitations in his ability to concentrate, persist, or maintain pace, the ALJ noted that the claimant was "able to prepare meals, watch TV, read, and use the internet" and that "the record fails to show an inability to complete testing that assesses concentration and attention." R. 37.

Fourth, the ALJ identified Plaintiff's residual functional capacity—that is, the most that Plaintiff could do despite his impairments. The ALJ concluded that Plaintiff could perform medium work as defined in 20 C.F.R. § 416.967(c)[2] except: Plaintiff was limited to understanding, remembering, and applying only simple instructions; he could interact appropriately with supervisors, but only occasionally with co-workers in jobs that did not require tandem tasks; he could not interact with the general public; he could concentrate, persist, and

_____

[2] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. 416.967(c). A full range of medium work requires standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday. SSR 83-10.

maintain pace for 2 hours at a time; and he could manage himself and adapt to gradual changes in the workplace. R. 38.

In reaching his conclusion as to Plaintiff's physical limitations, the ALJ noted that, although Plaintiff alleged disabling pain from his peripheral neuropathy, he was not being treated for the condition, and objective findings on physical examinations (e.g., that he had normal gait, normal strength, normal range of motion) did not support Plaintiff's claimed limitations. R. 39.

In reaching his conclusion as to Plaintiff's mental limitations, the ALJ noted that Plaintiff "has engaged in a somewhat normal level of daily activity," including by going out alone, using public transportation, managing his own finances, and shopping in stores. R. 40. The ALJ found that the physical and mental capabilities, as well as social interactions, required for those tasks "replicate those necessary for obtaining and maintaining employment within the parameters of the residual functional capacity described in this decision." *Id.*

In forming the RFC, the ALJ also considered the opinions of the State agency psychological consultants Yamir Laboy, Psy.D., and Candace Mihm, Ph.D. R. 41. The ALJ found both opinions "generally persuasive" but distinguished Dr. Mihm's opinion as "more persuasive, as it is more consistent with the medical evidence of record, which shows that during periods of sobriety and medication compliance, the claimant's recent memory was intact,

his thought process was organized, abstract reasoning was intact, and his intelligence appeared average." *Id.*

And, the ALJ considered the opinion of Alicia Carden, APRN, who had opined that Plaintiff's mental limitations were marked. R. 41; *see also* R. 793–95 (underlying opinion). The ALJ determined the opinion to be "unpersuasive, as it is inconsistent with the medical evidence of record . . . which shows that the claimant has no more than mild to moderate limitations when compliant with prescribed medications." R. 41.

After considering the evidence presented in the record and at the hearing, the ALJ concluded that Plaintiff could perform his past relevant work as an automatic washer/detailer, both as generally performed and as Plaintiff actually performed it. R. 42. Accordingly, based on Plaintiff's work experience, his RFC, and the testimony of the VE, the ALJ found that Plaintiff was not disabled. *Id.*

Following the ALJ's decision, Plaintiff requested review from the Appeals Council, which denied it. R. 30–32. Plaintiff then filed a Complaint with this Court. Doc. 1. He filed a brief opposing the Commissioner's decision (Doc. 18), and the Commissioner responded (Doc. 22). Plaintiff did not file a reply. The case is now ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

## II.     Standard of Review

The Court reviews the ALJ's decision with deference to its factual findings, but no deference to its legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citations omitted); *Lewis v. Barnhart*, 285 F.3d 1329, 1330 (11th Cir. 2002) ("With respect to the Commissioner's legal conclusions, . . . our review is *de novo*."). The Court must uphold a determination by the Commissioner that a claimant is not disabled if the determination is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). Substantial evidence is merely "more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quoting *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (per curium)); *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). In other words, the Court is not permitted to reweigh the evidence or substitute its own judgment for that of the ALJ even if the Court finds the evidence preponderates against the ALJ's decision. *See Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

13

That said, the ALJ must state the grounds for his decision with enough clarity to enable the Court to conduct meaningful review of the standards he employs. *See Keeton*, 21 F.3d at 1066 (we must reverse when the ALJ has failed to "provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted"); *Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984).

In making its decision, the Court must review the entire record. *Id.*; *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (citing *Bridges v. Bowen*, 815 F.2d 622 (11th Cir. 1987)).

## III.   Analysis

On appeal, Plaintiff argues that the ALJ erred by (1) finding Plaintiff could perform his past relevant work even though he could stand for only six hours per shift; (2) failing to include in Plaintiff's RFC certain limitations recommended by state agency consultants, Yamir Laboy, Psy. D. and Candice Mihm, Ph.D.; (3) improperly calibrating Plaintiff's limitations in his ability to maintain concentration, persistence, and pace; (4) improperly evaluating the opinion of Alicia Carden, APRN; (5) failing to consider evidence in Plaintiff's 2018 application for social security; and (6) concluding that Plaintiff was not disabled based on the aforementioned errors. Doc. 18.

a. <u>The ALJ did not err in finding that Plaintiff could perform his past relevant work, as he actually performed it.</u>

Plaintiff argues the ALJ erred in finding that Plaintiff could perform his past relevant work as a washer/detailer. Pl. Br. (Doc. 18) at pp. 3–7.  Plaintiff alleges two errors comprise the ALJ's finding. First, Plaintiff argues that the ALJ committed legal error in finding that "the claimant is able to perform his past work as an automatic washer/detailer as . . . generally performed" (R. 42); Plaintiff explains that, because Plaintiff's past work as a washer/detailer was a composite job (meaning that it consisted of a combination of two different jobs described in the Dictionary of Occupational Titles), the ALJ was permitted to consider only how the work was *actually* performed by Plaintiff, not how is was *generally* performed in the national economy. Second, Plaintiff argues that the ALJ erroneously found that Plaintiff could perform his work as an automatic washer/detailer as he actually performed it, because Plaintiff initially reported as part of his disability application that this past work required standing and/or walking for up to eight hours, in contrast to the ALJ's finding that Plaintiff could stand and/or walk for only up to six hours.

Defendant appears to concede that the ALJ erred in considering whether Plaintiff could perform his past work, a composite job, as it was generally performed. *See* Def. Br. (Doc. 22), pp. 5–7; *See also Jones v. Bank of Am., N.A.*, 564 F. App'x. 432, 434 (11th Cir. 2014) ("[A] party's failure to respond to any

15

portion or claim in a motion indicates such portion, claim or defense is unopposed."). But Defendant argues that Plaintiff's ability to perform his work as an automatic washer/detailer as Plaintiff actually performed it is supported by substantial evidence—indeed, by Plaintiff's own testimony. Def. Br. (Doc. 22), p. 6.

### 1. Applicable Law

The ALJ must determine whether a claimant has the residual functional capacity ("RFC") to perform his past relevant work; if so, he is not disabled. 20 C.F.R. § 416.920(a)(4)(iv). The RFC is the most an individual can still do despite any limitations caused by his impairments. 20 C.F.R. § 416.945(a). In determining the RFC, the ALJ must take into account "all relevant evidence," including the medical evidence, the claimant's own testimony, and the observations of others. 20 C.F.R. § 416.945(a)(3). Then, the ALJ must compare the RFC to the demands of past relevant work to determine whether the claimant is still capable of performing that kind of work.

Past relevant work is defined as work that a claimant had done within the past 15 years, that was substantial gainful activity, and lasted long enough for the claimant to learn to do it. 20 C.F.R. § 416.960(b)(1). The claimant has the burden of showing that his impairments prevent him from performing his past relevant work. *Sewell v. Bowen*, 792 F.2d 1065, 1067 (11th Cir. 1986). However, the Commissioner has a duty to develop a full and fair record,

including inquiring into the specific requirements and demands of a claimant's past relevant work. *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (per curiam). To make this determination, an ALJ will ask a claimant for information about the nature of his prior work. 20 C.F.R. § 416.960(b)(2). A claimant is the primary source for such information, and a claimant's statements regarding the manner in which he performed his past work are "generally sufficient for determining the skill level and physical and mental demands of such work." SSR 24-2p.

The ALJ, often using the assistance of a VE, then classifies the past relevant work into an occupation listed in the Dictionary of Occupation Titles ("DOT"). If the past relevant work does not fall neatly within the one of the occupations listed in the DOT, it is then considered a "composite job," meaning it has elements of two or more occupations listed in the DOT. *See Smith v. Comm'r of Soc. Sec.*, 743 F. App'x 951, 954 (11th Cir. 2018) (per curiam).

Generally, after classifying a claimant's past relevant work, the ALJ must determine whether the claimant can perform the functional demands and duties of his past job *as he actually performed it* and, if not, whether the claimant can perform the functional demands and duties of the occupation as *generally* required by employers throughout the national economy. *See* SSR 24-2p; *Jackson v. Bowen*, 801 F.2d 1291, 1293-94 (11th Cir. 1986) ("[A] claimant must demonstrate an inability to return to the previous type of work he was

17

engaged in."). However, this analysis differs for "composite jobs." With those, the ALJ may not consider whether a claimant can perform his past work "as generally performed in the national economy" at Step Four, but instead must determine at that step of the analysis only if the claimant "can perform all parts of the job" as the claimant actually performed it. *See Smith*, 743 F. App'x at 954 ("When the claimant's previous work qualifies as a composite job, the ALJ must consider the particular facts of the individual case to consider whether the claimant can perform his previous work as actually performed." This is because composite jobs have "significant elements of two or more occupations and, as such, ha[ve] no counterpart in the DOT.").

Ultimately, if a claimant can still do the kind of work he previously performed as he performed it, then the claimant is not disabled. 20 C.F.R. § 416.920(f). On the other hand, if an ALJ determines that the claimant cannot perform his past relevant work as he previously performed it, the burden shifts to the Commissioner to prove at Step Five that the claimant is capable of performing work that exists in significant numbers in the national economy. *Allen v. Sullivan*, 880 F.2d 1200, 1201 (11th Cir. 1989).

## 2. *The Record and ALJ's Decision as to Plaintiff's Prior Work*

On materials related to his disability application, Plaintiff indicated that he had one job in the last fifteen years—at RV World as a detailer.[3] R. 290. When applying for disability benefits, Plaintiff indicated that, in his prior work, he had to stand and walk for 8 hours each shift. R. 291. In contrast, at the hearing before the ALJ, Plaintiff testified under oath (R. 54) that the job required him to stand only in one-hour intervals, for a total of just three to four hours in an eight-hour shift (R. 62). When specifically asked "Did you ever stand longer than four hours [in that job]?" he responded that he did not recall doing so. R. 63.

After hearing Plaintiff's testimony, the VE testified that Plaintiff's past work was a composite job, comprised of the jobs listed in the DOT as an automatic washer and a detailer, both jobs generally requiring "medium" exertional levels, but that Plaintiff performed the job at a "light" exertional level, and as unskilled work. R. 85. The VE testified that someone with who was able to lift, carry, push, or pull 50 pounds occasionally and 25 pounds frequently, stand and/or walk six hours in an eight-hour workday, and sit six hours in an eight-hour workday, could perform the composite job as actually Plaintiff actually performed the job. R. 86–87.

---

[3] Although Plaintiff later testified that he had also had a job cleaning busses (R. 57), he did not list this work in his written job history. *See* R. 290.

19

Following the hearing, the ALJ concluded that Plaintiff had the RFC to perform medium work. R. 38. Of import, the Social Security Regulations specify that medium work requires standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday. SSR 83-10. The ALJ further determined that, because Plaintiff could perform medium work, he could "perform his past relevant work as an automatic washer/detailer as actually and generally performed." R. 42.

### 3. Analysis

The ALJ found that Plaintiff's past work was a composite job. R. 42. The question at Step Four, therefore, was whether Plaintiff could perform his past work as he actually performed it. *See Smith*, 743 F. App'x at 954. The ALJ found that Plaintiff had the RFC to stand and/or walk for up to six hours in an eight-hour work day[4] (R. 38) and that Plaintiff could perform his work as an automatic washer/detailer as Plaintiff previously performed it (R. 42). Plaintiff avers these two findings are inconsistent, pointing only to a form on which Plaintiff stated that he stood and/or walked for 8 hours in each shift in his prior employment (R. 291). But Plaintiff ignores other evidence in the record: Plaintiff's testimony under oath that Plaintiff stood only in one-hour intervals

---

[4] Specifically, the ALJ found that Plaintiff could perform medium work, which requires standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday. SSR 83-10.

during his prior work, for a total of no more than four hours each shift (R. 62–63). This sworn testimony amounts to substantial evidence that someone with Plaintiff's RFC (able to stand and/or walk for up to six hours a shift) could perform Plaintiff's past work as he performed it. *See Biestek*, 139 S. Ct. at 1154 (describing a low threshold for evidentiary sufficiency).

And while the ALJ additionally determined that Plaintiff could perform his past work as it was generally performed (*see* R. 42), that finding was superfluous—and, therefore, harmless—given that the ALJ properly found that Plaintiff could perform his past work as Plaintiff actually performed it.

Accordingly, I find no reversible error in the ALJ's finding at Step Four that Plaintiff could perform his past relevant work.

b. <u>The ALJ's opinion that that Plaintiff was limited to "understanding, remembering, and applying simple instructions" is consistent with Drs. Laboy's and Dr. Mihm's opinions. And the ALJ did not err in rejecting Dr. Laboy's opinion that Plaintiff was limited in his ability to interact with supervisors. Substantial evidence supports the ALJ's finding as to Plaintiff's ability to interact with supervisors.</u>

Plaintiff next argues that ALJ erred by failing to include in Plaintiff's RFC the limitations recommended by state agency consultants, Yamir Laboy, Psy. D. and Candice Mihm, Ph.D. Pl. Br. (Doc. 18), at pp. 7–12. Plaintiff points out that Drs. Laboy and Mihm opined that Plaintiff was limited in his ability to carry out *detailed* instructions and to interact appropriately with supervisors by responding appropriately to criticism. R. 103–06; 120–21. The

ALJ found both opinions "generally persuasive" (R. 41) but then, according to Plaintiff, did not incorporate corresponding limitations in Plaintiff's RFC (*see* R. 38). Plaintiff argues that the ALJ erred by failing either to include the limitations in the RFC or to explain why such limitations were not included. Defendant responds that, contrary to what Plaintiff argues, the ALJ's RFC finding is entirely consistent with Drs. Laboy and Mihm's opinions, meaning that he adopted their opinions. Def. Br. (Doc. 22), pp. 8–11.

### 1. *Applicable Law*

The RFC is the most that a claimant "can still do despite his limitations." 20 C.F.R. § 416.945(a)(1). An ALJ must assess the RFC based on "all the relevant evidence in the [] record," including the medical evidence, and must consider all the claimant's impairments, both severe and non-severe. *Id.* § 416.945(a)(1)–(3). The ALJ considers medical opinions, among other things, in making the RFC assessment. *Id.* § 416.945(a)(3).

The ALJ need not assign specific evidentiary weight to any medical opinion. *Id.* § 416.920c(a). The ALJ must, however, consider five factors in evaluating the persuasiveness of a medical opinion: supportability, consistency, the provider's relationship with the claimant, the provider's specialization, and other factors. *Id.* § 416.920c(c)(1)–(5).

Moreover, the ALJ must articulate how he considered the supportability and consistency factors, which the regulations deem the most important. *Id.* §

22

416.920c(b)(2). As to supportability, the more relevant the objective medical evidence and supporting explanations from the medical source, the more persuasive the medical opinion will be. *Id.* § 416.920c(c)(1). As to consistency, the more consistent a medical opinion is with the evidence from other sources, the more persuasive the medical opinion will be. *Id.* § 416.920c(c)(2).

Ultimately, the RFC is within the exclusive province of the ALJ, so the ALJ need not match the RFC to any medical opinion. *See* 20 C.F.R. § 416.946(c); *see also* 416.920c(a) (stating the ALJ will not give controlling weight to any medical opinion). But the ALJ's decision must identify sufficiently for this Court's review the basis on which he chose to omit from the RFC a portion of an opinion he otherwise found persuasive. A court cannot affirm simply because some unstated rationale would have supported the ALJ's decision. *Owens*, 748 F.2d at 1516.

### 2. *The ALJ's Discussion of Dr. Laboy's and Dr. Mihm's Opinions*

Drs. Laboy and Mihm served as state agency psychological consultants, meaning that they did not treat or examine Plaintiff but, rather, reviewed Plaintiff's medical records and formed an opinion as to his limitations. Both Drs. Laboy and Mihm determined that the claimant had moderate limitations in his ability to maintain attention and concentration for extended periods, his ability to complete a normal workday without interruptions from psychologically based symptoms, his ability to interact appropriately with the

general public, and his ability to accept and respond appropriately to criticism from supervisors. R. 103–06; 120–21. Ultimately, Dr. Laboy opined that Plaintiff could comprehend/memorize brief, straightforward job-related instructions, execute short, simple instructions, communicate about routine employment matters, accept periodic, instructive supervisory input, and adjust to modifications in his work duties, but could not work collaboratively with others or interact with the public in a customer service position. R. 106–07. Meanwhile, Dr. Mihm opined that Plaintiff had the RFC to understand and remember simple and detailed instructions, perform simple tasks, could maintain the concentration, persistence, and pace for simple tasks with ordinary supervision, could adapt to changes in the workplace, and could interact adequately with others as needed (but would perform best in a low social demand setting). R. 120. Notably, Dr. Mihm found that Plaintiff's moderate limitation in his ability to accept criticism did not warrant any limitations in his RFC (R. 120 (noting "ordinary supervision")), while Dr. Laboy found that Plaintiff's limitation in that area limited his RFC to "accepting periodic, instructive supervisory input" (R. 107 (noting that Plaintiff could not respond appropriately to critical managerial feedback)).

The ALJ found both opinions "generally persuasive" but distinguished Dr. Mihm's opinion "more persuasive, as it is more consistent with the medical evidence of record, which shows that during periods of sobriety and medication

compliance, the claimant's recent memory was intact, his thought process was organized, abstract reasoning was intact, and his intelligence appeared average." R. 41.

Ultimately, the ALJ adopted an RFC that was generally consistent with that opined by Drs. Laboy and Mihm. The ALJ, like Dr. Laboy, concluded that Plaintiff was limited to understanding, remembering, and applying simple instructions. R. 38. And, like both Drs. Laboy and Mihm, the ALJ concluded that Plaintiff could only occasionally interact with co-workers and in jobs that do not require collaborative work, and could not interact with the public. *Id.* As to Plaintiff's limitation in interacting with supervisors, the ALJ concluded that Plaintiff was capable of "interacting appropriately with supervisors." *Id.*; *see also* R. 86 (using the same language in his hypothetical to the VE). The Court interprets this language to mean that Plaintiff was not limited in his ability to interact with supervisors, including by accepting feedback from them.

### 3. Analysis

Plaintiff complains about the ALJ's failure to incorporate or otherwise address Drs. Laboy's and Mihm's opinions that Plaintiff was limited in his ability to carry out detailed instructions and Dr. Laboys' opinion that Plaintiff could not respond to criticism and, therefore, interact appropriately with supervisors.

25

First, the argument that the ALJ omitted the doctors' proposed limitations on Plaintiff's ability to carry out detailed instructions is mistaken. The ALJ concluded that that Plaintiff was limited to "understanding, remembering, and applying simple instructions." R. 38. This is consistent—or even more limited—than Drs. Laboy's opinion that Plaintiff could understand, memorize and execute simple instructions (R. 106–07) and Dr. Mihm's opinion that Plaintiff could understand and remember simple and detailed instructions and perform simple tasks (R. 120). Consistent with his statement that he found both opinions "generally persuasive" (R. 41), the ALJ incorporated the state agency consultants' proffered limitations in Plaintiff's ability to carry out detailed instructions (R. 38); Plaintiff's suggestion otherwise fails.

Plaintiff's argument that the ALJ failed to include in the RFC any limitations on his ability to interact appropriately with supervisors (i.e., by responding appropriately to criticism), or to explain why he rejected that portion of the opinion, also fails. Again, Dr. Mihm found that Plaintiff's moderate limitation in his ability to accept criticism did not warrant any limitations in his RFC (R. 120 (noting "ordinary supervision")), while Dr. Laboy found that Plaintiff was limited to "accepting periodic, instructive supervisory input" and could not respond appropriately to critical managerial feedback (R. 107). Mirroring the opinion of Dr. Mihm, the ALJ found Plaintiff was not limited in his ability to interact with supervisors, adopting no limitations in

receiving criticism (R. 38). The ALJ offered this explanation for the weight he gave these opinions: "While the undersigned finds both opinions generally persuasive, Dr. Mihm's opinion is more persuasive, as it is more consistent with the medical evidence of record, which shows that during periods of sobriety and medication compliance, the claimant's recent memory was intact, his thought process was organized, abstract reasoning was intact, and his intelligence appeared average." R. 41.

While Plaintiff narrowly interprets this reasoning, arguing it does not specifically address why the ALJ rejected Dr. Laboy's specific finding that Plaintiff could not appropriately interact with supervisors in responding to their criticism, I read the ALJ's explanation more broadly and find it sufficient. The ALJ expressly found that, when Plaintiff was compliant with his medication and not under the influence of drugs or alcohol, Plaintiff acted rationally and was not greatly limited in his mental functions, including in his ability to interact with supervisors. R. 38. Thus, contrary to Plaintiff's argument, the ALJ proffered a sufficient reason to reject Dr. Laboy's opinion as to Plaintiff's interaction with supervisors.

Moreover, I find there is substantial evidence in the record to show that Plaintiff could appropriately interact with supervisors (i.e., receive criticism). Consistent with the ALJ's remarks, Plaintiff did not suffer from anger issues when he was compliant with his treatment and not using drugs. *See* R. 470

(reporting in September 2017 that he was calmer on medication); R. 484 ("I have not been snapping out on people."). The most recent treatment notes in the record show that Plaintiff was compliant with his medication. R. 788, 799. Moreover, although Plaintiff reported being easily angered (*see, e.g.,* R. 755), his providers rated his limitations in the category of "danger to others" as being either "no problem" or "less than slight problem." R. 735, 753, 780.

Accordingly, I find no error in the ALJ's rejection of Dr. Laboy's opinion that Plaintiff was limited in his ability to interact appropriately with supervisors in accepting criticism, and I find that substantial evidence supports the ALJ's conclusion that Plaintiff could interact appropriately with supervisors.

   c.  <u>Substantial evidence supports the ALJ's findings as to Plaintiff's ability to sustain concentration, persistence, and pace.</u>

Plaintiff additionally argues that the ALJ erred in considering Plaintiff's limitations in concentration, persistence, and pace.  Pl. Br. (Doc. 18) at Issue No. 3. Plaintiff asserts that the ALJ first erred when he improperly considered these limitations while performing the Psychiatric Review Technique during Step Three, and asserts that the ALJ erred again at Step Four when he failed to formulate an RFC that incorporated Plaintiff's limitations in this area, including his need to be off-task or absent due to his inability to sustain

concentration. *Id.*, pp. 12–16. Defendant responds that Plaintiff is asking this Court to reweigh the evidence, which it cannot do. Def. Br. (Doc. 22), p. 14.

### 1. *Applicable Law*

The ALJ must evaluate Plaintiff's mental impairments using the Psychiatric Review Technique ("PRT"). 20 C.F.R. § 416.920a. The ALJ rates the severity of a claimant's ability to: understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. *Id.* § 416.920a(c)(3). The PRT is a distinct process from the RFC determination. *Id.* § 416.920a(d)(3). Nonetheless, the Eleventh Circuit has held the PRT findings should not be ignored during the RFC analysis. *Winschel*, 631 F.3d at 1181. Rather, the ALJ must "indicate that medical evidence suggested [a claimant's] ability to work was unaffected by [the] limitation [identified in the PRT findings] or "otherwise . . . account for the limitation in the hypothetical [to the VE]." *Id.*

### 2. *The ALJ's Analysis of Plaintiff's Ability to Concentrate*

Using the PRT, the ALJ found that Plaintiff had mild limitations in understanding, remembering, or applying information and in his ability to adapt or manage himself, and moderate limitations in his ability to interact with others and to concentrate, persist, or maintain pace. R. 36–37. In finding he had moderate limitations in his ability to concentrate, persist, or maintain pace, the ALJ noted that the claimant was "able to prepare meals, watch TV,

read, and use the internet" and that "the record fails to show an inability to complete testing that assesses concentration and attention." R. 37.

The ALJ then found in the RFC that Plaintiff was limited to work that required understanding, remembering, and applying only simple instructions and concentrating, persisting, and maintaining pace for only 2 hours at a time. R. 38; *see also* R. 86 (including these limitations in a hypothetical to the VE).

### 3. *Analysis*

Plaintiff first attacks the ALJ's stated reasons for finding Plaintiff was only moderately limited in his ability to maintain concentration, persistence, and pace: that Plaintiff performed daily activities like reading, making meals, and watching TV and that "the record fails to show an inability to complete testing that assesses concentration and attention" (R. 37). I find that substantial evidence—including certain evidence explicitly cited by the ALJ—supports the finding that Plaintiff was no more than moderately limited in his ability to maintain concentration, persistence, and pace.

First, Plaintiff's therapist typically found his concentration, memory, and cognition to be within normal limits. R. 449, 454, 463, 468, 471, 474, 477, 486, 493, 499, 510, 513, 555, 563, 576, 740, 751, 755, 778, 786, 789, 800. Second, Plaintiff himself reported to his providers that he was having trouble concentrating only occasionally. R. 802. And, as noted by the ALJ, Plaintiff's ability to read, cook meals, and watch TV (R. 370, 372) reflects and ability to

concentrate. *Gibbs v. Barnhart*, 156 F. App'x 243, 247 (11th Cir. 2005) (affirming a decision in which the ALJ found that the claimant was only mildly limited in his ability to "maintain concentration, persistence, or pace, since Gibbs testified that he reads, watches television for several hours per day, and drives, all of which require an elevated level of concentration."). Thus, the ALJ's decision regarding this limitation was based on substantial evidence.

Plaintiff also suggests that the ALJ erred by ignoring the PRT findings in developing Plaintiff's RFC. But it appears the ALJ incorporated the PRT findings into Plaintiff's RFC. Specifically, the ALJ appeared to incorporate the moderate limitation in Plaintiff's concentration, persistence, and pace by finding that Plaintiff was limited to "limited to understanding, remembering, and applying simple instructions,"[5] and by finding that he could concentrate, persist, and maintain pace in only two-hour increments. R. 38. *Mijenes v. Comm'r of Soc. Sec.*, 687 F. App'x 842, 846 (11th Cir. 2017) ("Because the medical evidence showed that [the plaintiff] could perform simple, routine tasks despite her limitations in concentration, persistence, and pace, the ALJ's

---

[5] This is consistent with the regulatory definition of "unskilled" work. Unskilled work is defined as "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time . . . . [A] person can usually learn to do the job in 30 days, and little specific vocational preparation and judgment are needed." 20 C.F.R. § 416.968(a); *see also Chambers v. Comm'r of Soc. Sec.*, 662 Fed. App'x. 869, 872 (11th Cir. 2016) (citing 20 C.F.R. § 404.1568(a)) (finding "unskilled work" encompasses "simple work").

limiting of [the RFC] to unskilled work sufficiently accounted for her moderate difficulties in concentration, persistence, and pace"); *Lee v. Comm'r, Soc. Sec. Admin.*, 551 F. App'x 539, 541 (11th Cir. 2014) ("The ALJ adequately accounted for all of [the plaintiff's] impairments in the hypothetical posed to the VE because he implicitly accounted for [the plaintiff's] limitations in concentration, persistence, and pace when he imposed a limitation of simple work.").

Plaintiff finally suggests–pointing to opinions from APRN Carden (R. 794), Dr. Laboy (R. 104–05), and Dr. Mihm (R. 120) that Plaintiff was moderately or markedly limited in his ability to complete a normal workday and workweek without interruptions–that the ALJ should have found that Plaintiff would have been regularly absent from work or off-task during the workday because of his inability to sustain concentration. But the Court does not consider whether evidence could support a different RFC finding; rather, the Court determines whether the ALJ's finding is supported by substantial evidence. *See Moore*, 405 F.3d at 1213 n.6. Here, it is. The ALJ accounted for limitations in Plaintiff's concentration during the workday by limiting to him to concentrating, persisting, and maintaining pace in 2-hour intervals. R. 38. The record supports a finding that these limitations were sufficient. As the ALJ explained, Plaintiff's ability to perform activities of daily living, including by shopping, preparing meals, using the internet, managing finances, and

navigating transportation alone, evidenced that he had the "mental capabilities . . . necessary for . . . maintaining employment . . . ." R. 40; *see also* R. 37. And, as previously mentioned, the record reflects that Plaintiff's concentration was generally intact when he was compliant with his medications. R. 449, 454, 463, 468, 471, 474, 477, 486, 493, 499, 510, 513, 555, 563, 576, 740, 751, 755, 778, 786, 789, 800.

Thus, the ALJ appropriately accounted for Plaintiff's limitations in his ability to maintain concentration, persistence, and pace.

d. <u>The ALJ's reasons for finding unpersuasive the opinion of APRN Carden are supported by substantial evidence.</u>

Plaintiff next attacks the ALJ's consideration of the opinion of APRN Carden, Plaintiff's mental health provider. Pl. Br. (Doc. 18) at pp. 16–19. Plaintiff argues that the ALJ did not properly evaluate her opinion, that he improperly cherry-picked evidence to discount her opinion, and that Plaintiff's mental health significantly limited his ability to work. Defendant disagrees, and points to evidence that supports the ALJ's reasoning for discounting APRN Carden's opinion. Def. Br. (Doc. 22), p. 15.

1. *Applicable Law*

The legal standard for considering medical opinions is outlined above, in Section III.b.1. Additionally relevant here, "[t]o the extent that [the claimant] points to other evidence which would undermine the ALJ's RFC determination,

33

her contentions misinterpret the narrowly circumscribed nature of our appellate review, which precludes us from 're-weigh[ing] the evidence or substitut[ing] our own judgment for that [of the Commissioner] . . . . even if the evidence preponderates against' the decision." *Moore*, 405 F.3d at 1213.

2. *APRN Carden's Opinion and the ALJ's Consideration of It*

APRN Carden was one of Plaintiff's mental health providers at Peace River Center. In May 2022, she partially completed a "Mental Residual Functional Capacity Assessment," by checking boxes indicating that Plaintiff had marked limitations in his ability to remember locations and work-like procedures, to understand and remember both short and detailed instructions, to maintain appropriate behavior, to work with others, to respond to change, to complete a normal workday, to ask simple questions or request assistance, to respond appropriately to changes in the work setting, to respond appropriately to criticism, and to maintain attention and concentration for extended periods. R. 793–95. She did not complete the portion of the assessment seeking an explanation of these conclusions. *Id.*

The ALJ determined the opinion to be "unpersuasive, as it is inconsistent with the medical evidence of record . . . which shows that the claimant has no more than mild to moderate limitations when compliant with prescribed medications." R. 41. Notably, in rejecting APRN Carden's opinion for its inconsistency with the record, the ALJ cited, among other things, APRN

Carden's own treatment notes. *See* R. 39–40 (referencing Carden's treatment notes in Exhibits B9F and B12F).

   *3. Analysis*

   Plaintiff does not explicitly argue that the ALJ failed to address the supportability and consistency factors in evaluating APRN Carden's opinion;[6] rather, he argues that the reasons the ALJ proffered for discounting the opinion were not supported by substantial evidence. I find the reasons the ALJ gave for rejecting the opinion comprise substantial evidence.

   The ALJ found that APRN Carden's opinion was inconsistent with records demonstrating Plaintiff's abilities while he was on his medication. And substantial evidence supports the ALJ's finding that Plaintiff had the capacity to work when he took his medication. First, Plaintiff's own statements support the finding, as he explained to his therapist, "I was doing good until I ran out of medication." R. 577. To the extent Plaintiff suffered declines in mental

---

   [6] *See Williams v. Hous. Auth. of Savannah, Inc.*, 834 F. App'x 482, 489 (11th Cir. 2020) (The parties bear the burdens "of formulating the arguments [they] wish[] for the court to address" and "the court [is] not required to evaluate the evidence under a theory . . . that [a party] did not raise."). Moreover, had Plaintiff made the argument, it would fail. The ALJ specifically noted that APRN Carden's notes were inconsistent with broader medical evidence. R. 41. He also clearly considered that APRN Carden's opinion was not supported by her own treatment notes. *See* R. 39–40 (referencing Carden's treatment notes in Exhibits B9F and B12F to support his findings on Plaintiff's mental RFC, including her notes that Plaintiff had intact concentration and reported "I have been doing better" in May 2022).

35

health, these corresponded to times when he was non-compliant with treatment or using drugs. *See* R. 470 (reporting in September 2017 that he was calmer on medication); R. 484 (on medication, "I have not been snapping out on people."); R. 517 (after being off medication and failing to seek mental health treatment for nearly six months, Plaintiff was Baker Acted); R. 716 (Plaintiff angry after being without medication).

Plaintiff's therapists typically found his concentration, memory, and cognition to be within normal limits. R. 449, 454, 463, 468, 471, 474, 477, 486, 493, 499, 510, 513, 555, 563, 576, 740, 751, 755, 778, 786, 789, 800. Although Plaintiff sometimes displayed impaired concentration, it usually correlated with substance abuse or noncompliance with medication. *See* R. 505 and 717 (impaired concentration when non-compliant with medication); 582 (limited concentration when seeking substance abuse treatment). At his appointments with his therapist, Plaintiff also often had normal demeanor and behavior. R. 449, 463, 471, 477, 493, 498, 513, 555, 576, 740, 755, 778.

This all amounts to substantial evidence to support the ALJ's decision to discount APRN Carden's opinion that Plaintiff was more limited in his mental functioning. And, although Plaintiff points to evidence in the record that would support different RFC finding, that is outside the scope of my review.

e.  <u>The ALJ did not err by failing to consider evidence from Plaintiff's
prior disability application.</u>

Plaintiff next argues that the ALJ was required to further develop the
record by incorporating all evidence from Plaintiff's prior disability
applications. Pl. Br. (Doc. 18), pp. 19–21. Defendant correctly notes that
Plaintiff fails to identify any evidence in the prior record that would have
supported Plaintiff's position. *See* Def. Br. (Doc. 22), p. 20.

1.  *Applicable Law*

The ALJ must develop a full and fair record. 20 C.F.R. § 416.912(b). The
regulations provide, "Before [the SSA] make[s] a determination that [a
claimant is] not disabled, [the SSA] will develop [the claimant's] complete
medical history for at least the 12 months preceding the month in which [the
claimant] file[s] [his] application." *Id*. § 416.912(b)(1). To discharge its duty to
develop the complete medical history, the ALJ must only make an initial
request for evidence from each of a claimant's medical sources and then one
follow-up request if that evidence is not received within 20 days. *Id*.

Additionally, the regulations state that, "If you say that your disability
began less than 12 months before you filed your application, we will develop
your complete medical history beginning with the month you say your
disability began unless we have reason to believe your disability began earlier."
*Id*. § 416.912(b)(1)(ii).

### 2. *Record Evidence Concerning Plaintiff's Date of Disability*

Plaintiff applied for disability insurance and supplemental security income on January 30, 2018. R. 33. An ALJ denied those claims on January 24, 2020. *Id.*

On June 22, 2020, Plaintiff filed another application for supplemental security income. R. 247–68. Plaintiff alleged on that application that he became disabled on January 1, 2016. *Id.* But the Social Security Administration had already determined that he was not disabled as of January 30, 2018; thus, Plaintiff amended the date, alleging instead that he became disabled on January 30, 2020, shortly after the ALJ's prior decision. R. 56.

### 3. *Analysis*

An ALJ denied Plaintiff's initial 2018 application on January 24, 2020 (R. 33), so the evidence in that case would have been dated prior to January 24, 2020, and did not support a finding that Plaintiff was disabled. Plaintiff filed the application for supplemental security income that relates to this appeal on June 22, 2020. R. 247–68. For purposes of this application, he alleges he became disabled on January 30, 2020. R. 56. The ALJ had a duty to develop the record "beginning with the month [he said his] disability began," 20 C.F.R. § 416.912(b)(1)(ii), which was January 2020. The ALJ's duty to develop the record only required that he make an initial request for evidence from each of a claimant's medical sources and then one follow-up request if that evidence

was not received within 20 days. *Id.* § 416.912(b)(1)(i). Plaintiff makes no allegation that the ALJ failed to discharge this requirement; indeed, there is evidence in the record dating back to 2017. R. 47. There is no additional requirement that the ALJ incorporate the record evidence from other, prior disability applications, which predate the date he now claims he became disabled. Thus, the ALJ has not committed any legal error by failing to do so.

f. Substantial evidence supports the ALJ's finding that Plaintiff can perform medium work.

In his last argument, Plaintiff asserts that the ALJ's finding that he can perform medium work is based on the ALJ's other errors and is not supported by substantial evidence.[7] Pl. Br. (Doc. 18), p. 21–23. Because I affirm the ALJ on the prior issues, I address only whether the ALJ's conclusion is supported by substantial evidence.

Plaintiff focuses in this argument on his allegations that neuropathy in his feet prevents him from standing for more than five minutes and that arthritis prevents him from gripping objects, thus preventing him from performing medium work. *Id.*

As to Plaintiff's alleged neuropathy and difficulty standing, the consultative examiner found that Plaintiff walked normally and had normal

---

[7] For this reason, Plaintiff argues that the Court should reverse the ALJ's decision and immediately award benefits to Plaintiff. Pl. Br. (Doc. 18), p. 21–23.

sensitivity in his feet. R. 762–63. In January 2022, Plaintiff reported that he had no problems walking or climbing stairs. R. 769. And, his therapist regularly noted that he walked independently. *See e.g.,* R. 462, 487, 716, 739, 750, 785.

As to his ability to grip, the consultative examiner found Plaintiff had a full range of motion in his hands and full grip strength. R. 763.

Thus, there is substantial evidence in the record to show that Plaintiff had the RFC to perform medium work, and the ALJ did not err by making this finding.

## IV.   Conclusion

For the reasons stated, I ORDER:

   (1)   The decision of the Commissioner is affirmed.

   (2)   The Clerk of Court shall enter judgment in the Defendant's favor, terminate any pending motions, and close the case.

ORDERED on September 24, 2024.

NATALIE HIRT ADAMS
United States Magistrate Judge